Austin *v.* Ridge, Appellant.

2

Argued March 18, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John Ward Hindman,* with him *Prichard, Lawler & Geltz,* for appellant.

*Anthony J. Martin,* with him *Alan Papernick* and *Martin and Papernick,* for appellee.

OPINION BY MR. JUSTICE POMEROY, June 27, 1969:

This is an appeal from an order of the lower court granting a new trial following a jury verdict in favor of the defendant. The case involved an action in trespass brought to recover damages for personal injuries resulting from a collision between an automobile operated by plaintiff-appellee and a truck owned by the Department of Highways of the Commonwealth of Pennsylvania and operated by defendant-appellant.

Appellant was employed by the Department of Highways as a temporary driver of a large dump truck on the date of the accident in question.   Appellant had been operating this particular truck weighing 10,-000 pounds for about a month before then, but had not previously loaded it to its capacity weight.   On that day he drove the truck without difficulty from

its garage at Christy Park to a site near New Kensington where the truck was to be loaded with about 20,-000 pounds of road paving materials. While on route to a job site after loading, appellant experienced no trouble or difficulty with the truck for several miles, until he began to descend Moss Side Boulevard. This stretch of highway is about two miles long and consists of a descent, a level stretch, then another down grade, and a final level area extending about a quarter mile before the intersection where the accident took place.

While on the first descent, appellant experienced some difficulty with the brakes which indicated that they were not taking hold and slowing the truck down in the normal fashion. Appellant stated, however, that he believed he would be able to stop the truck, notwithstanding this difficulty. At that time, he was operating the truck in third gear and in high differential as opposed to low differential which would have retarded the movement of the truck. Appellant testified that after he had traversed the first level area and started into the second descent, he knew that the brakes were not stopping the truck as they should have, but he remained confident that he would be able to stop should that become necessary. There were a number of areas along the road where the appellant could have pulled off, had he chosen to do so.

Appellant had previously made tentative plans to stop for coffee at a diner located at the intersection in question, if a fellow worker, who had preceded him, had stopped there. Consequently, after he had completed the second descent stage and was on the final level area before the intersection, the appellant attempted to observe the diner's parking lot, where a number of trucks were parked, in an effort to determine whether his friend had stopped. Before he looked

into the parking area, appellant had seen the appellee's car stopped at the intersection, waiting to make a left-hand turn. Having determined that his friend had not stopped at the diner, appellant looked ahead and shifted into fourth gear somewhat automatically at about the same time, causing the truck to move ahead faster. He then realized that appellee was still stopped at the intersection in front of him and applied the service brakes of the truck. The brakes slowed the truck but were inadequate to bring it to a stop. Appellant applied the emergency brake, but it too did not stop the truck. Swerving to the right in a last-minute attempt to avoid a collision, the appellant caught the right rear of appellee's automobile with the left side of his truck and propelled the car into a gasoline truck coming from the opposite direction, causing injuries to the appellee. At no time during the descent of Moss Side Boulevard, after becoming aware that his truck lacked its normal braking power, did appellant either test his brakes to determine his ability to stop the truck or compensate for the reduced braking capacity by his manner of driving.

The sole question presented by this appeal is whether the order of the trial judge granting the motion for a new trial on the ground that the verdict was against the weight of the evidence was a lawful exercise of judicial discretion. The grant of a new trial is within the sound discretion of the trial judge, who is present at the offering of all relevant testimony, but that discretion is not absolute; this Court will review the action of the court below and will reverse if it determines that it acted capriciously or palpably abused its discretion. *Burd v. Pennsylvania Railroad Company,* 401 Pa. 284, 164 A. 2d 324 (1960); *Decker v. Kulesza,* 369 Pa. 259, 85 A. 2d 413 (1952); *Bellettiere v. Philadelphia,* 367 Pa. 638, 81 A. 2d 857 (1951). This brings

us to the central problem, viz., what freedom does the trial court have to review and set aside a jury verdict where the evidence presented to the jury is legally sufficient to sustain that verdict?

In delimiting this discretion, our Court has adopted an intermediate position between those states which leave trial courts virtually unfettered and permit the judge to review jury determinations as a thirteenth juror,[1] on the one hand, and those, on the other hand, which restrict the discretion of the trial court to ordering a new trial only where, on the evidence presented to it, a jury could not reasonably have reached its verdict.[2] In hewing to this intermediate path, our Court has adopted the prevailing rule in the federal courts[3] and one which is widely followed in the state courts.[4]

Established doctrine in Pennsylvania dictates that a trial judge abuses his discretion when he grants a new trial merely because he would have arrived at a different conclusion on the facts of the case than that reached by the jury. *Hummel v. Womeldorf*, 426 Pa. 460, 464, 233 A. 2d 215 (1967). Where, however, the trial court is convinced that the verdict is against the clear weight of the evidence or that the judicial process has effected a serious injustice, he is under a

---

[1] "The rule in this State is firmly established that the trial court shall exercise the function of a thirteenth juror upon hearing of a motion for a new trial; that it is his duty to weigh the evidence and independently determine therefrom whether or not it is sufficient to sustain the verdict." *McLaughlin v. Broyles*, 36 Tenn. App. 391, 397, 255 S.W. 2d 1020 (1952). See also *Hawk v. City of Newport Beach*, 46 Cal. 2d 213, 293 P. 2d 48 (1956).

[2] See e.g. *Kerrigan v. Detroit Steel Corp.*, 146 Conn. 658, 154 A. 2d 517 (1959).

[3] See 6A Moore's Federal Practice, ¶59.08[5] (2d Ed. 1966).

[4] See 39 Am. Jur., New Trial §§129-131. See generally James, Civil Procedure, pp. 312-14, 1965.

duty to grant a new trial. *Pritchard v. Malatesta*, 421 Pa. 11, 13, 218 A. 2d 753 (1966). Our rule may be simply stated; its content is more elusive; and its application will of course require a continuing exercise of judicial sensitivity. The burden of the approach outlined is to treat the legitimacy of the trial court's grant of a new trial as a function of the seriousness of the jury's departure from that result which the trial court feels is dictated by the evidence. Where the case is close and the evidence contradictory, the jury must perforce be given freer rein; but a new trial should be granted and will be upheld where the jury verdict is so opposed to the facts that the judicial conscience cannot let the result stand.

In its opinion granting a new trial in the case at bar, the court below emphasized its duty to do so where it found the verdict shocking and unjust or where the judge's sense of justice was so shaken that he could not in conscience allow the verdict to stand. Since, in the trial court's view, the uncontradicted evidence coming from the appellant himself established his responsibility for the accident, it granted appellee's motion for a new trial on the ground that the jury verdict stood contrary to the weight of the evidence.

In reviewing the grant or refusal of a new trial to determine whether there has been a palpable abuse of discretion, we must view all the evidence in the record. See *Noel v. Puckett*, 427 Pa. 328, 235 A. 2d 380 (1967); *Sherman v. Manufacturers Light & Heat Co.*, 389 Pa. 61, 68n, 132 A. 2d 255 (1957); and *Denman v. Rhodes*, 206 Pa. Superior Ct. 457 (1965). The record in this case discloses ample justification for the trial court's decision. The opinion below cited as an explanation for the unacceptable jury verdict the "frightening degree" of negligence on the part of the Commonwealth of Pennsylvania with respect to inadequate mainte-

nance of the truck, inadequate training of the mechanic who adjusted the brakes several days before the accident, and the almost total lack of training of the appellant as a driver of heavy trucks. Since the negligence of the Commonwealth "was so much more striking and arresting" than that of appellant, the trial court theorized that "the jury lost sight of the lesser negligence of the defendant" and failed to deliver a proper verdict in favor of appellee. In its opinion the lower court indicated its appreciation of the proper standard for granting a new trial; its application of that standard in this case was not capricious and does not constitute a palpable abuse of discretion.

Order granting motion for new trial affirmed.