393 A.2d 701

**Frank G. DITZ, a minor by Frank E. Ditz and Nancy B. Ditz, his wife, parents and natural guardians, and Frank E. Ditz and Nancy B. Ditz, in their own right, Appellants,**

v.

**Gloria MARSHALL.**

Superior Court of Pennsylvania.

Argued April 10, 1978.

Decided Oct. 20, 1978.

32

Raymond S. Woodard, Franklin, for appellants.

John R. Gavin, Oil City, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, Judge:

Plaintiff-appellant initiated this action in trespass for damages resulting from injuries to person and property sustained by appellant and his son in a collision with appellee's vehicle. The jury found appellee non-negligent and appellant requested a new trial. The lower court denied the motion. Appellant asks this court to reverse the lower court's decision, arguing that the verdict was against the weight of the evidence. After careful review of the record we rule in appellant's favor and grant a new trial.

The accident giving rise to this appeal occurred on April 20, 1972 where U.S. Route 62 intersects with Route 257 in Cranberry Township, Venango County, Pennsylvania. These two roads form a "Y" type intersection, with Route 62 constituting the stem and northwest branch of the "Y". At the time of the accident, Route 62 was constructed with a general northerly course from Oil City toward the Borough of Tionesta. Route 257 made up the northeast branch of the "Y" intersection.

Approximately 83 feet past the "Y" intersection,[1] Routes 62 and 257 were connected by a short two-lane roadway, which served as a turnoff and allowed persons traveling south on Route 62 to turn left and get onto Route 257 going northeast. Appellee was traveling south on Route 62 and it

1. At the "Y" intersection is a triangular shaped island of grass, lying between Routes 62 and 257. At the base of this triangle is the turnoff roadway. The measurement of 83 feet was taken along the edge of this island of grass which runs along Route 62.

was at this short connecting road that appellee attempted to turn left.

The posted speed limit on Route 62 in the vicinity of the accident was 35 miles per hour; neither party was said to have been speeding. The time of the collision was fixed by witnesses as being around 7:30 P.M. It was just becoming dusk but headlights were not needed.

Appellant's car was going north on Route 62 when it collided with appellee's car coming south on Route 62 as appellee tried to turn left across Route 62 onto the turnoff. After the accident an investigation was conducted by Troopers Jack Paterson and Charles Minick. Trooper Paterson testified that Route 62 was basically level at the point of collision. Furthermore, he added that Route 62 ran in a straight course three hundred to four hundred feet north from the point of collision, which would be appellant's view, and also straight two hundred feet to the south, the direction faced by appellee. Regarding the view of a driver traveling south on Route 62 approaching the accident area Trooper Paterson explained that Route 62 curves rather sharply to the right.

Appellant testified that he was coming around the curve heading north on Route 62 when he first observed appellee's auto. Appellant estimated that he first saw appellee's car when appellee was approximately 250 feet north of the site of the collision and when his vehicle was 250 feet south. Appellee testified that she never saw appellant's vehicle until the moment of collision. A building located on the southwesterly side of Route 62 and in the area of the turnoff was said to have been an obstruction, to some degree, to the view of both northbound and southbound drivers.

At the trial, appellant called Marlene Heath, a passenger in appellee's car, as a witness. Miss Heath testified that she first saw appellant's car when it was about 100 feet away and appellee's car had just begun to make a left turn onto the connecting road. Miss Heath said that she yelled to appellee to stop. When Miss Heath realized that appellee

wasn't going to stop, she slid over into the back seat. Both appellee and Miss Heath testified that the collision occurred a split second after appellee started her turn. Appellant testified that appellee was only 50 feet away from him when appellee suddenly turned across the roadway directly in front of him; according to appellant the collision happened within two seconds after appellee started the turn. Appellant now argues that the verdict in appellee's favor is contrary to the weight of the evidence.

The general rule for a grant of a new trial on the basis that it is against the weight of the evidence allows the granting of a new trial only when the jury's verdict is contrary to the evidence as to shock one's sense of justice and a new trial is necessary to rectify this situation. *Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 265 A.2d 516 (1970); *Brown v. McLean Trucking Co.*, 434 Pa. 427, 256 A.2d 606 (1969); *Jones v. Williams*, 358 Pa. 559, 58 A.2d 57 (1948). Unlike appellate review of a refusal to enter a judgment n.o.v., where the evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict winner, the appellate court, in reviewing the refusal to grant a new trial, ordinarily considers all of the evidence. *Abbott v. Steel City Piping Co.*, 437 Pa. 412, 263 A.2d 881 (1970). The court is not required to consider the evidence in the light most favorable to the verdict winner when passing on the question of whether a verdict is against the weight of the evidence. *Denman v. Rhodes*, 206 Pa.Super. 457, 214 A.2d 274 (1965). Rather, the court is to view all of the evidence.

The decision of the lower court, either granting or refusing a new trial, is considered to be within the sound discretion of the trial judge and will be reversed on appeal only if the appellate court determines that the trial court palpably abused its discretion. *Burrell v. Philadelphia Electric Co.*, supra; *Austin v. Ridge*, 435 Pa. 1, 255 A.2d 123

(1969). We find that the instant case justifies a reversal under the above test.

■■ Defendant-appellee testified that she did look before turning but did not see appellant's vehicle approaching. There was absolutely no allegation that either party was speeding, yet appellee also testified that the collision occurred a split second after appellee started to turn, and if neither party was speeding, then a reasonable conclusion is that appellee began her turn when appellant's vehicle was almost upon her.

"One does not have the absolute right to turn into or cross another lane of traffic and may do so only after signaling an intention so to do and first having reasonably assured himself that, by his so doing, others using the highway will not be placed in danger of injury: *Martin et al. v. Arnold,* 366 Pa. 128, 77 A.2d 99 (1950)." *Sollinger v. Hemchak,* 402 Pa. 232, 236, 166 A.2d 531, 534 (1961).

A driver of a vehicle cannot claim to have looked when he has failed to see what the physical facts declare he should have seen. *Hoover v. Sackett,* 221 Pa.Super. 447, 451, 292 A.2d 461 (1972). Appellee's passenger first saw appellant when the latter was 100 feet away and even called out to warn appellee. Although appellee claimed to have slowed her vehicle before the turn, there was no testimony whatsoever that tended to show that appellee tried to stop her vehicle after she was made aware of appellant's oncoming car. In addition, in spite of her passenger's testimony, appellee testified she looked but did not see appellant before she, the appellee, began her turn. Given these facts we cannot uphold the lower court's refusal to order a new trial. The verdict, in light of the evidence, was clearly against the weight of the evidence and compels a new trial.

Verdict and judgment reversed and a new trial is ordered.

PRICE and VAN der VOORT, JJ., dissent.

HOFFMAN, J., did not participate in the consideration or decision of this case.