418 A.2d 618

BERTAB INC., and its subsidiary, American Heating Company and Fidelity & Deposit Company of Maryland

v.

Patricia A. FOX and Craig L. Fox

v.

Blaise DEL VAGLIO, a/k/a William Del Vaglio and Florence Del Vaglio, his wife.

Appeal of Blaise DEL VAGLIO, a/k/a William Del Vaglio and Florence Del Vaglio.

Superior Court of Pennsylvania.

Argued April 10, 1979.

Filed Feb. 13, 1980.

Reargument Denied April 25, 1980.

John P. Joyce, Pittsburgh, for appellants.

James R. Farley, Pittsburgh, for appellee, Bertab Inc., etc., and Fidelity & Deposit Company of Maryland.

Before VAN der VOORT, SPAETH and WATKINS, JJ.

SPAETH, Judge:

This is an appeal from an order granting a new trial in a garnishment action on the ground that the jury's verdict was against the weight of the evidence.

Patricia A. Fox, who is the daughter of appellants, Blaise and Florence Del Vaglio, worked for appellee American Heating Company from June 1972 until December 1974, when it was discovered that she had been embezzling money. She admitted the embezzlement and on December 17, 1974, signed a judgment note payable to American Heating in the amount of $159,276.50. Later it was discovered that Mrs. Fox had also misappropriated additional funds amounting to approximately $100,000, and judgment was also entered against her in that amount.

In the meantime, on December 10, 1974, the Del Vaglios bought a house for $19,500 in Wilkinsburg, Allegheny County. They paid for the house with a cashier's check, made payable to them and drawn on Equibank. Mrs. Fox had purchased the cashier's check on December 6, 1974. The theory of the present action is that in purchasing the cashier's check, Mrs. Fox used funds she had embezzled from American Heating, and that from this fact it follows that the Del Vaglios may not keep the house.

In support of this theory, appellees presented the following evidence. On December 6, 1974, Mrs. Fox deposited several American Heating checks in her account and then wrote herself a personal check in the amount of $17,500. An Equibank teller testified that Mrs. Fox bought the cashier's check for $19,500 by using this personal check and additional American Heating checks in the amount of $2,000. The teller testified that Mrs. Fox did not use any cash but only the checks, and that she requested the cashier's check to "purchase a house for her mother and father."

The Del Vaglios testified as follows. They had been renting the house for many years from a relative. In September 1974, he informed them that he was no longer interested in renting the house to them but wanted to sell it. They decided to buy it and sent their daughter, Mrs. Fox, to the bank to get a check for the purchase price, giving her $19,500 in cash. Not trusting banks, they had kept the money hidden at home. When they gave Mrs. Fox the money to take to the bank for the check, they put it in a brown paper shopping bag. Copies of the deed to the house and tax and insurance receipts were admitted as evidence that the Del Vaglios owned the house.

The trial judge instructed the jury that "the issue is very simple—did Patricia Fox purchase this property from funds that had been misappropriated from [American Heating]? And, secondly, did she buy this property for herself and put it in the name of her parents?" N.T. at 140–41. During its deliberations the jury asked two questions, which will be discussed later. After several hours, it returned a verdict

against appellees and in favor of the Del Vaglios. The lower court granted appellees' motion for a new trial, and this appeal followed.

It is settled that the "grant of a new trial is within the sound discretion of the trial judge, who is present at the offering of all relevant testimony but that discretion is not absolute; [the appellate court] will review the action of the court below and will reverse if it determines that it acted capriciously or palpably abused its discretion." *Austin v. Ridge*, 435 Pa. 1, 4, 255 A.2d 123, 124 (1969) (collecting cases); *Albert v. Alter*, 252 Pa.Super. 203, 212, 381 A.2d 459, 463 (1977). A trial judge will be held to have abused his discretion when he grants a new trial merely because he would have arrived at a different conclusion on the facts of the case than that reached by the jury. *Austin v. Ridge, supra*; see *Carroll v. Pittsburgh*, 368 Pa. 436, 445–46, 84 A.2d 505, 509 (1951); *Albert v. Alter, supra.* Thus a trial judge should only grant a new trial when the jury's verdict is so contrary to the evidence as to shock his sense of justice and a new trial is necessary to rectify the situation. *Austin v. Ridge, supra*; *Ditz v. Marshall*, 259 Pa.Super. 31, 393 A.2d 701 (1978). In reviewing the grant of a new trial the appellate court looks to all of the evidence. *Ditz v. Marshall, supra.*

In granting the new trial in this case, the lower court relied on the testimony of the bank teller to conclude that "[i]n the present case, regardless of the testimony of the Del Vaglios that they gave their daughter money to obtain a cashier's check, and regardless of what may have happened to the money that the Del Vaglios claimed they gave to their daughter, it is clear that the money actually used for the purchase of the home was money misappropriated from American Heating Company by Patricia A. Fox." Opinion of the lower court at p. 2. As appellants, the Del Vaglios criticize the lower court for its reliance on the testimony of the teller, but in our opinion the court's reliance was not misplaced, for the teller was the only disinterested witness and the only person besides Mrs. Fox who was present at the

purchase of the cashier's check. The Del Vaglios did not see Mrs. Fox purchase the cashier's check with the cash they claimed they gave to her, and the teller was sure that Mrs. Fox paid with checks, and not with cash, and certainly not with $19,500 cash.

Were the sole issue in this case that of the source of the funds used to purchase the cashier's check, we should have no problem in concluding that in granting a new trial, the lower court did not abuse its discretion, and we should affirm without further discussion. There is another issue, however, that requires discussion.

Pa.R.Civ.P., No. 3101(b), upon which the present action is based, provides:

Any person may be a garnishee and shall be deemed to have possession of property of defendant if he . . .
(4) holds the legal title to property of the defendant whether or not in fraud of creditors.

Under this provision, one of the issues the jury had to decide was whether the Del Vaglios, as garnishees, held title to the house as "property of" their daughter, Patricia Fox, who was one of the defendants in the action (the other defendant was her husband). Of course we cannot be sure of the jury's reasoning. Nevertheless, it is sufficiently clear that the jury had difficulty in deciding whose "property" the house was. After deliberating for almost two hours, the jury returned with the following questions: "If the American Heating Co. funds were used by Patricia A. Fox to buy this house at 942 Rita Drive *for* her parents, knowing that at some future time, upon the death of both parents for instance, the ownership of the house shall revert back to Mrs. Fox's ownership, how does the law instruct us to find? Does the probably [*sic*] of future ownership insinuate that the house was purchased for Patricia A. Fox?" (Emphasis in original.)[1] N.T. 146–47. The trial judge answered these ques-

1. The jury also asked the following question: "In reference to the DEMAND NOTE dated December 17, 1974, and signed by Patricia A. Fox, and others; If at some future time, ownership of the house should revert back to Mrs. Fox, does the demand note permit [appel-

tions by stating that there was but one "simple" issue: "and that is a determination as to whether this property was brought from funds misappropriated from American Heating Company and for Mrs. Fox but put in the name of her parents." N.T. 147.

The trial judge's answer to the jury's questions may well have misled the jury. The deed, corroborated by the tax and insurance receipts proved that title to the house was in the Del Vaglios. Suppose, as seems most likely, that the jury believed the disinterested testimony of the Equibank teller, and therefore decided that the Del Vaglios had bought the house with funds that their daughter Mrs. Fox had misappropriated from American Heating. The judge's answer to the jury's questions indicated that the jury should then decide whether the house had been bought "for Mrs. Fox but put in the name of her parents [the Del Vaglios]." The difficulty with this answer is that it may be understood—and might have been understood by the jury—as requiring that a choice be made between two different verdicts. First: If the house had been bought "for Mrs. Fox," then the verdict should be *against* the Del Vaglios. Second: If, however, the house had *not* been bought "for Mrs. Fox," then the verdict should be *for* the Del Vaglios. In other words: The critical issue might have seemed to the jury to be whether, when Mrs. Fox gave her parents the cashier's check that she had bought with the funds she had misappropriated from American Heating, she said, in effect, "Buy the house and *hold it for me*," or, "Buy the house *for yourselves*." [2]

When one appreciates that the jury might have understood the trial judge's answer to its question as requiring it to make such a choice, the verdict is readily understood. It

lee] Bertab Inc. to place a lien against the property in an attempt to partially satisfy the above mentioned note." [Punctuation as in original.]

2. It seems especially likely that the jury saw the issue in these terms, given its emphasis, in the phrase in its question to the trial judge, "If the American Heating Co. funds were used by Patricia A. Fox to buy this house at 942 Rita Drive *for* her parents  .  .  .."

seems likely that the jury decided that when Mrs. Fox gave her parents the cashier's check, she said, "Buy the house *for yourselves*," and, this finding made, that the jury went on to decide that the house had not been bought "for Mrs. Fox" but "for her parents [the Del Vaglios]," and that their verdict should therefore be for the Del Vaglios.

We can appreciate why the conscience of the lower court was shocked by the verdict. From the evidence of record, it does indeed seem unjust to permit the Del Vaglios to keep a house bought with embezzled funds. In fairness to the jury, however, it must be noted that the verdict does not manifest bias or capricious disregard of evidence, but rather may be seen as a logical result of the manner in which the issue was presented. Had the issue been presented in terms of conversion or unjust enrichment, the verdict might well have been different. *See, e. g., Hower v. Ulrich*, 156 Pa. 410, 27 A. 37 (1893); *Diesel v. Caputo*, 244 Pa.Super. 195, 366 A.2d 1259 (1976). Presenting the issue in the context of a garnishment proceeding may well have misled the jury. In making this observation, we do not decide on what theory the new trial should be held; we must leave that to counsel and the trial judge. We only offer the observation by way of explaining how in our opinion the verdict came to be returned.

Affirmed.